IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THE ESTATE OF CAROL HAMMACK, ET AL., | ] ] ] |
| Plaintiffs, | ] ] |
| v. | 2:13-cv-01690-KOB ] ] |
| PATRICIA CROOK WESTBROOK, | ] ] |
| Defendant. | ] |

### MEMORANDUM OPINION

This matter comes before the court on Defendant Patricia Crook Westbrook's "Motion to Dismiss Amended Complaint." (Doc. 14). Plaintiffs Allen Hammack and The Estate of Carol Hammack, by and through its personal representative, Allen Hammack, bring this diversity action against Defendant Patricia Crook Westbrook, seeking compensatory and punitive damages for breach of fiduciary duty, conversion, unjust enrichment, and receipt of mistaken payments of assets of The Estate. (Doc. 13). Defendant Westbrook moves to dismiss the claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 14). For the following reasons, the court will DENY Defendant's motion to dismiss.

I.   PROCEDURAL BACKGROUND

During the briefing of this motion to dismiss, Plaintiffs filed a "Motion to Strike/Deny Defendant's Amended Motion to Dismiss/for Summary Judgment or, in the Alternative to Defer or Deny the Motion Pending the Conclusion of Discovery." (Doc. 17). In considering the motion,

the court denied Defendant's alternative motion "to defer or deny the motion pending the conclusion of discovery." (Doc. 23). The court then granted the motion to strike in part and denied it in part, striking documents 10-4, 10-5, and 10-7, and ruling that documents 10-1, 10-2, 10-3, and 10-6 were central to the Plaintiffs' claims, that their authenticity was not challenged, and that they should be taken into account in the court's consideration of the motion to dismiss. (Doc. 23).

On April 14, 2014, the court *sua sponte* ordered the Plaintiffs to show cause in writing why the court should not dismiss this case for lack of jurisdiction under the "probate exception." (Doc. 24). On April 30, 2014, Plaintiffs responded, arguing that the probate exception should not apply because "[t]his action does not seek to disturb or affect the possession of property in the custody of the Jefferson County Probate Court, nor does it seek to compel a disposition of the will or the estate." (Doc. 26, pg. 4). Having received clarification from the Plaintiffs that the Estate of Carol Hammack is still pending before the Jefferson County Probate Court, but that Plaintiffs do not seek to have this court dispose of the Estate, the court finds that the limited probate exception does not apply in this circumstance and that this court has jurisdiction to hear this case.

## II.  FACTS

On December 11, 1999, William J. Hammack and Carol Joy Neighbors (Hammack), the decedent, were married in Jefferson County, Alabama. Both Mr. Hammack and Ms. Neighbors had been previously married and each had four adult children from their previous marriages. Prior to and in contemplation of their marriage, Mr. Hammack and Ms. Neighbors entered into an ante-nuptial agreement in which they contracted as to the division of their assets upon either

of their deaths. (Doc. 13, ¶¶ 8-10).

The ante-nuptial agreement stated, in relevant part:

> Not withstanding any provision contained herein to the contrary, the parties agree that in the event that the husband should predecease the wife, it is the expressed desire and intent of the parties that the wife shall have full right, title, interest and use of all property, whether real, personal or mixed, belonging to the husband, except that family heirlooms and memorabilia belonging to the husband shall be distributed to the husband's children upon the husband's death. Upon the wife's demise, the wife shall devise and bequeath a one-thirds (1/3) share of her estate to her four children, Patricia Crook Westbrook, Gregory Melbourne Crook, Jr., Peggi Crook Ward, and Nanci Neighbors Scarpulla[1]; and a two-third (2/3) share of her estate to the husbands [sic] four children, William Allen Hammack, Jeffery Thomas Hammack, James Christopher Hammack, and Marie Inez Hammack.

(Doc. 10-1, ¶ 9). The ante-nuptial agreement provided that if the wife should predecease the husband, the same distribution would occur. (Doc. 13, ¶ 11).

After the marriage, both Mr. and Mrs. Hammack revised their wills. Mr. Hammack's May 10, 2001 revision stated:

> In accordance with Paragraph 9 of that certain *Antenuptial Agreement* dated October 7, 1999 between my wife, CAROL J. (NEIGHBORS) HAMMACK, and me, I give, devise and bequeath all the rest, residue and remainder of any property that I may own or have an interest in at the time of my death, whether real, personal or mixed, wheresoever situated, to my wife, CAROL J. HAMMACK, for her use and benefit for and during her life-time and, upon my said wife's death, I give, devise and bequeath my said property as follows:
> (a)   A two-thirds (2/3) share of my property shall be divided equally among my children, WILLIAM ALLEN HAMMACK, JEFFREY THOMAS HAMMACK, JAMES CHRISTOPHER HAMMACK, and MARIE INEZ HAMMACK LAYTON, absolutely and fee simple, per stirpes.
> (b)   A one-third (1/3) share of my property shall be divided equally among my wife's children, PATRICIA CROOK WESTBOOK [sic], GREGORY MELBOURNE CROOK, JR.; PEGGI CROOK WARD, AND NANCI

---

[1]Ms. Scarpulla's name is spelled "Nancy Nabors Scarpulla" in the amended complaint (doc. 13), but is spelled "Nanci Neighbors Scarpulla" in the copy of the ante-nuptial agreement that Defendant provided to the court (doc. 10-1). The court will use the spelling from the ante-nuptial agreement in its opinion.

NEIGHBORS SCARPULLA, absolutely and fee simple, per stirpes. (Doc. 10-2, ¶ 4). According to the amended complaint, Mrs. Hammack's will originally contained the same language as Mr. Hammack's will. (Doc. 13, ¶¶ 12-13).

On September 7, 2004, Mr. Hammack died. At the time of his death, five annuity/life insurance policies that Mr. Hammack had obtained prior to his marriage to Mrs. Carol Hammack had a value of approximately $357,000.000. The policies identified Mr. Hammack's estate as the beneficiary. On February 14, 2005, Mrs. Hammack liquidated the five policies and received $348,724.00. On March 18, 2005, Mrs. Hammack used the proceeds from Mr. Hammack's policies to purchase Penn Life Income Annuities solely in her name. She identified her daughter, Defendant Patricia Westbrook, as the sole beneficiary of these accounts. Mrs. Hammack regularly withdrew funds from these accounts until her death. (Doc. 13, ¶¶ 14-20).

In December 2010, Mrs. Hammack entered the hospital suffering various health problems. At that time she granted Ms. Westbrook power of attorney to manage her personal, financial, and healthcare decisions in the event she became unable to make the decisions for herself. In conjunction with this power of attorney, Mrs. Hammack also placed Ms. Westbrook's name on her accounts at Regions Bank. Some of these accounts had originally been accounts belonging to Mr. Hammack. According to the amended complaint, Mrs. Hammack's intent in placing Ms. Westbrook's name on the accounts was not to grant Ms. Westbrook any interest in the accounts, but to enable her to act for the benefit and convenience of Mrs. Hammack. After being added to the accounts, Ms. Westbrook withdrew funds from the accounts for her own personal benefit. Mrs. Hammack revoked Ms. Westbrook's power of attorney in April 2011, but apparently left her name on the accounts. (Doc. 13, ¶¶ 25-30).

On March 7, 2012, Mrs. Hammack revised her will so as to exclude James Christopher Hammack completely and to divide her estate between the other seven children equally. (Doc. 13, ¶ 21, Doc. 10). On April 5, 2012, Mrs. Hammack died. (Doc. 13, ¶ 31).

Upon Mrs. Hammack's death, Allen Hammack, the appointed administrator of Mrs. Hammack's Estate, sought instructions from the Jefferson County Probate Court as to whether Mrs. Hammack's will or the ante-nuptial agreement controlled the distribution of her Estate. (Doc. 10-3, 10-6). The Probate Court found that "the heirs of Mr. and Mrs. Hammack are third party beneficiaries of the Prenuptial Agreement, and are entitled to specific performance under that Agreement. Therefore, the Court finds that the Prenuptial Agreement signed by Mrs. Hammack is legally enforceable; and that the entire Estate of Carol Attaway Neighbors Hammack shall be distributed by the personal representative in accordance with the terms of said Prenuptial Agreement." (Doc. 10-6).

In summarizing the facts of the case before reaching its conclusion, the Probate Court also noted that "[i]n his Will, Mr. Hammack specifically addressed the Prenuptial Agreement which had previously been executed between himself and Mrs. Hammack. In reliance upon the previously executed prenuptial agreement, Mr. Hammack's Will instructed that Mrs. Hammack be given a life estate in all of the assets of the Estate, and then upon her death, that the assets be distributed specifically in accordance with the terms of the Prenuptial Agreement." (Doc. 10-6).

According to the amended complaint, "[u]ltimately, it is the agreement of the estate, its heirs and order of the Jefferson County Probate Court that the intent of William Hammack and the decedent from their ante-nuptial agreement that each should receive a life estate in the estate of the other; that upon the death of the survivor of the two, two-thirds (2/3) of the estate would

5

pass to William Hammack's four children and one-third (1/3) of the estate to the decedent's four children." (Doc. 13, ¶ 24).

On May 25, 2012, Ms. Westbrook applied for and received the remaining funds in the Penn Life Income Annuities, totaling $83,211.64. On June 8, 2012, she transferred $12,588.38 from Mrs. Hammack's Regions Bank account into her own personal account. The Estate of Carol Hammack contacted Ms. Westbrook and demanded that she pay the funds over to the Estate, but she refused. (Doc. 13, ¶ 34).

### III.    STANDARD OF REVIEW

Defendant challenges the complaint under both Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) attacks come in two forms: facial attacks and factual attacks. *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir. 1990). "Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in this complaint are taken as true for the purposes of the motion." *Id*. at 1529 (internal quotations omitted). Factual attacks, however, "challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id*.

A Rule 12(b)(6) motion to dismiss attacks the legal sufficiency of the complaint. Generally, the Federal Rules of Civil Procedure require only that the complaint provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)).  A plaintiff must provide the grounds of his entitlement, but Rule 8 generally does not require "detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 555 (2007) (quoting *Conley*, 355 U.S. at 47). It does, however, "demand[ ] more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards nor do pleadings suffice that are based merely upon "labels or conclusions" or "naked assertions" without supporting factual allegations. *Twombly*, 550 U.S. at 555, 557.

The Supreme Court explained that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting and explaining its decision in *Twombly*, 550 U.S. at 570).

The Supreme Court has identified "two working principles" for the district court to use in applying the facial plausibility standard. The first principle is that, in evaluating motions to dismiss, the court must assume the veracity of *well-pleaded factual* allegations; however, the court does not have to accept as true legal conclusions even when "couched as [] factual allegation[s]" or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U.S. at 678. The second principle is that "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.

Although a court is typically limited to the facts in the complaint when considering a Rule 12(b)(6) motion to dismiss, "the court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005).

## IV.  DISCUSSION

The central allegation underlying all of the Plaintiffs' claims in this case is that the money at issue here—the money used to buy the Penn Life Income Annuity and the money in the Regions Bank accounts—was originally part of the estate of William Hammack. As such, the distribution of *Mr*. Hammack's estate is a key factor in determining who is entitled to the funds. Although various relevant documents are before the court for its consideration—Mr. Hammack's will, the antenuptial agreement, Mrs. Hammack's will, and the Order of the Jefferson County Probate Court—these documents are not totally consistent with each other and do not clearly show who is entitled to the disputed funds.

Mr. Hammack's will conveys to Mrs. Hammack a life estate in his residual estate with the remainder to be split among the eight children as specified. (Doc. 10, Exhibit B). Although Mr. Hammack's will specifically notes that it is distributing his estate in accordance with the antenuptial agreement, the antenuptial agreement is not as clear as his will; it can be read as providing that, should Mr. Hammack die first, he would devise his residual estate to Mrs. Hammack outright and then she would devise *her* estate to the eight children as specified. (Doc. 10, Exhibit A). However, the Jefferson County Probate Court found that Mr. Hammack's will granted Mrs. Hammack a life estate "[i]n reliance upon the previously executed prenuptial agreement . . ." and then ordered Mrs. Hammack's estate to be distributed in accordance with the antenuptial agreement. The Jefferson County Probate Court's Order is unclear whether it reads the antenuptial agreement as conveying a life estate. (Doc. 10, Exhibit F).

Because of the ambiguity over the manner in which Mrs. Hammack obtained the funds from Mr. Hammack, this court finds that it cannot address the issues raised in Ms. Westbrook's

motion at this early stage with only the limited materials before it. The court finds that Plaintiffs have sufficiently stated their claims for relief and have standing to bring those claims as an individual and entity that stand to receive the proceeds at issue under certain interpretations of the relevant documents. *See Ames By and Through Parker v. Reeves*, 553 So. 2d 570, 573 (Ala. 1989) ("A decision regarding standing to contest a will is made by determining whether, at the time of probate of the contested will, the contestant has a real, beneficial interest under a prior will that would be injuriously affected by the establishment of the later will.").

V.     CONCLUSION

For the reasons discussed above, the court will DENY Ms. Westbrook's motion to dismiss.

DONE and ORDERED this 1st day of July, 2014.

_____
KARON OWEN BOWDRE
CHIEF UNITED STATES DISTRICT JUDGE